BART M. DAVIS, ID STATE BAR NO. 2696
UNITED STATES ATTORNEY
**JAMES P. SCHAEFER, CA STATE BAR NO. 250417**
**ASSISTANT UNITED STATES ATTORNEY**
DISTRICT OF IDAHO
WASHINGTON GROUP PLAZA IV
800 EAST PARK BOULEVARD, SUITE 600
BOISE, ID 83712-7788
TELEPHONE: (208) 334-1211
FACSIMILE:   (208) 334-1414
Email: James.Schaefer@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>NORTHCON, INC. and RANDALL L. SMITH<br><br>　　　　　　Defendants. | Case No.<br><br>**COMPLAINT** |

Plaintiff, the United States of America, alleges as follows:

**<u>Introduction</u>**

1.　　　This is an action by the United States against defendants Northcon, Inc.

("Northcon") and Randall L. Smith ("Smith") (collectively, "Defendants") for treble damages

and civil penalties for violations of the False Claims Act ("FCA"), as amended, 31 U.S.C. §§

3729-3733; civil penalties under the Financial Institutions Reform, Recovery, and Enforcement

Act of 1989 ("FIRREA"); and damages for the common law unjust enrichment.

**COMPLAINT - 1**

2.      The United States alleges that Defendants falsely and fraudulently represented to the Small Business Administration ("SBA") and numerous federal contracting officials that Northcon was qualified to receive Historically Underutilized Business Zone ("HUBZone") set-aside contracts.  Specifically, between September 2011 and December 2013, Defendants repeatedly misrepresented that:  (a) Northcon's principal office was located in Orofino, Idaho ("Orofino Office"), and therefore within a HUBZone; and (b) Northcon satisfied the HUBZone program's requirement that 35% of Northcon's employees reside in a HUBZone.  Defendants knew that these representations were false because:  (a) Northcon's principal office was actually located in Hayden, Idaho ("Hayden Office"), which was not in a HUBZone; and (b) Northcon did not satisfy the HUBZone program's 35% residency requirement.

3.      Northcon's Orofino Office was a sham designed by Defendants to create the false impression that Northcon moved its principal office to Orofino in September 2011.  To perpetrate this fraud, Defendants placed no-show employees on Northcon's Orofino Office payroll.  Northcon fabricated payroll records that falsely indicated that these individuals worked the 40 hours per month required for an individual to count as an employee for purposes of satisfying the HUBZone program's principal office and 35% residency requirements.

4.      Defendants perpetrated this fraud to:  (a) avoid Northcon being decertified as a HUBZone small business concern ("SBC") on October 1, 2011; and (2) remain eligible to be awarded HUBZone set-aside contracts.  Defendants' false and fraudulent representations caused the SBA to continue certifying Northcon as a HUBZone SBC after Northcon was no longer qualified to be a HUBZone SBC.  The SBA would not have done so had it known the truth, *i.e.*, that Northcon's principal office was not within a HUBZone and Northcon did not satisfy the HUBZone program's 35% residency requirement.

**COMPLAINT - 2**

5.      Defendants' false and fraudulent representations caused the United States, acting through the Department of Army and Department of Homeland Security, to award HUBZone set-aside contracts to Northcon that it was not qualified to receive.  The United States would not have done so had it known that Northcon did not meet the HUBZone program's principal office and 35% residency requirements.

6.      Defendants presented, or caused to be presented, 812 separate claims for payment under the HUBZone set-aside contracts that they obtained by fraud.  As a result of these false claims, the United States paid Northcon over $52,799,106.58.  Each of the false claims for payment that Defendants presented, or caused to be presented, on the HUBZone set-aside contracts that they obtained by fraud constitutes a separate violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A).

7.      Defendants also knowingly made, used, or caused to be made or used, false records and statements material to their false and fraudulent claims, including, but not limited to, false records and statements that:  (a) Northcon's principal office was located in Orofino, Idaho; (b) Northcon satisfied the HUBZone program's 35% residency requirement; (c) Northcon was a qualified HUBZone SBC; and (d) individuals worked at least 40 hours per month at specified locations.  Each of these false records and statements constitutes a separate violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B).

8.      By knowingly making false statements for the purpose of influencing the actions of the SBA for the purpose of obtaining HUBZone set-aside contracts, Defendants also violated FIRREA.  *See* 12 U.S.C. § 1833a(c)(3); 15 U.S.C. § 645(a).

**COMPLAINT - 3**

## The Law

**A.    The False Claims Act**

9.    The FCA is the United States' primary litigation tool against fraud perpetrated by those who wrongfully obtain monies from federally-funded contracts, projects, and programs. Consistent with the congressional purpose underlying the FCA, the Supreme Court has noted that the FCA must be interpreted broadly so as to apply to all those who receive government monies to which they are not entitled. *See United States v. Niefert-White Co.*, 390 U.S. 228, 232 (1968).

10.    The FCA provides that a person is liable to the United States Government for three times the amount of damages the Government sustains because of the acts of that person, plus a civil penalty, for each instance in which the person "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval."   31 U.S.C. § 3729(a)(1)(A).

11.    The FCA also provides that a person is liable to the United States Government for three times the amount of damages that the Government sustains because of the acts of that person, plus a civil penalty, for each instance in which the person "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B).

12.    The FCA defines "knowing" and "knowingly" as having actual knowledge that the information is false, or acting with a deliberate ignorance of, or reckless disregard for, the truth or falsity of the information.  31 U.S.C. § 3729(b)(1).  The FCA does not require proof of specific intent to defraud.  *Id.*

13.    The FCA extends to fraud-in-the-inducement.  Under this theory, FCA liability attaches "to each claim submitted to the government under a contract, when the contract or extension of the government benefit was originally obtained through false statements or

fraudulent conduct." *United States ex rel. Campie v. Gilead Sciences, Inc.*, 862 F.3d 890, 902 (9th Cir. 2017).

**B.    Financial Institutions Reform, Recovery, and Enforcement Act of 1989**

14.    FIRREA provides that any person who violates, or who conspires to violate, certain listed provisions of the law is liable for a civil penalty of up to $1.1 million (as adjusted by 28 C.F.R. § 85.3(a)(6)).  12 U.S.C. § 1833a(b)(1).  In the case of a continuing violation, the court may impose a penalty of up to $5.5 million (as adjusted by 28 C.F.R. § 85.3(a)(7)). 12 U.S.C. § 1833a(b)(2).  If a violation results in pecuniary gain or loss, the amount of the penalty may exceed the above-listed maximums, but may not exceed the gain or loss.  12 U.S.C. § 1833a(b)(3)(A).

15.    FIRREA applies to section 16(a) of the Small Business Act, 15 U.S.C. § 645(a). 12 U.S.C. § 1833a(c)(3).  Section 16(a) imposes liability on anyone who "makes any statement knowing it to be false . . . for the purpose of influencing in any way the action of the [Small Business] Administration, or for the purpose of obtaining money, property, or anything of value . . . under this Act[.]"  15 U.S.C. § 645(a).

## Jurisdiction and Venue

16.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1345, and 31 U.S.C. §§ 3729, 3730(a), and 3732.

17.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) and 31 U.S.C. § 3732 because Defendants made the false claims and statements alleged in this Complaint in the District of Idaho.

**COMPLAINT - 5**

18.     This Court has personal jurisdiction over the Defendants because they resided in the District of Idaho, transacted business in the District of Idaho, and engaged in wrongdoing in the District of Idaho.

## The Parties

19.     Plaintiff United States of America, acting through the SBA, administers the HUBZone program.  Plaintiff United States of America, acting through the Department of Air Force, Department of Army, and Department of Homeland Security, and other departments and agencies, awards HUBZone set-aside contracts to qualified HUBZone SBCs.

20.     At all times relevant to this Complaint, Defendant Northcon, Inc. was an Idaho corporation located in Hayden, Idaho.

21.     At all times relevant to this Complaint, Defendant Randall L. Smith:  (a) resided and worked in Idaho; (b) was an owner of Northcon; (c) served as Northcon's president; and (d) was responsible for the day-to-day operation of Northcon, including its application for and compliance with the SBA's HUBZone Program.

## Factual Allegations

### A.     The HUBZone Program

22.     The HUBZone program, codified in the Small Business Act at 15 U.S.C. § 657a, is one of the exceptions to the general rule of full and open competition for government contracts.  It allows federal agencies, in cooperation with the SBA, to establish small business set-asides to aid small businesses that are located in economically disadvantaged or distressed areas known as HUBZones.

23.     HUBZones consist of qualified census tracts, qualified non-metropolitan counties, lands within the external boundaries of an Indian reservation, qualified base closure areas, and

**COMPLAINT - 6**

"redesignated" areas. *See* 13 C.F.R. § 126.103. HUBZone designations are subject to change as new data is collected and released by different agencies, including the Census Bureau.

24.     "Redesignated" areas are areas that once qualified as HUBZone areas but stopped qualifying. During the time period relevant to this case, a redesignated area remained a HUBZone until the later of: (a) the date on which the Census Bureau publicly released the first results from the 2010 decennial census; or (b) 3 years after the date on which the area would otherwise have ceased to be a qualified HUBZone. 15 U.S.C. § 632(p)(4)(C).

25.     By statute, in order to be certified as a HUBZone SBC and, therefore, eligible to bid on and be awarded HUBZone set-aside contracts, a small business must have its "principal office" located in a HUBZone and at least 35% of its "employees" must reside in a HUBZone. *See* 15 U.S.C. § 632(p)(5)(A)(i)(I)(aa). A HUBZone SBC must satisfy these requirements on the date it submits its bid and on the date the contract is awarded.

26.     The Small Business Act does not define "principal office" or "employee." However, the SBA has promulgated regulations governing the administration of the HUBZone program. *See* 13 C.F.R. § 126.100 through § 126.900. The requirements for certification as a HUBZone SBC are set out in 13 C.F.R. § 126.200, entitled "What requirements must a concern meet to receive SBA certification as a qualified HUBZone SBC?"

27.     Consistent with 15 U.S.C. § 632(p)(5)(A)(i)(I)(aa), the SBA's regulations require that to be a qualified HUBZone SBC a company must: (a) maintain its "principal office" located in a HUBZone; and (b) ensure at least 35% of its "employees" reside in a HUBZone.

28.     Under the SBA's regulations, an individual must work 40 hours per month to be considered an "employee" for purposes of HUBZone SBC eligibility:

> Employee means all individuals employed on a full-time, part-time, or other basis, so long as that individual *works a minimum of 40 hours per month*. This includes

employees obtained from a temporary employee agency, leasing concern, or through a union agreement or co-employed pursuant to a professional employer organization agreement. SBA will consider the totality of the circumstances, including criteria used by the IRS for Federal income tax purposes and those set forth in SBA's Size Policy Statement No. 1, in determining whether individuals are employees of a concern. Volunteers (i.e., individuals who receive deferred compensation or no compensation, including no in-kind compensation, for work performed) are not considered employees. However, if an individual has an ownership interest in and *works for the HUBZone SBC a minimum of 40 hours per month*, that owner is considered an employee regardless of whether or not the individual receives compensation.

13 C.F.R. § 126.103 (version effective May 3, 2010 to December 30, 2013) (emphasis added).

29.     Under the SBA's regulations, a HUBZone SBC's principal office is the location where the greatest number of its employees at any one location perform their work:

> Principal office means *the location where the greatest number of the concern's employees at any one location perform their work.* However, for those concerns whose "primary industry" (see 13 CFR 121.107) is service or construction (see 13 CFR 121.201), the determination of principal office excludes the concern's employees who perform the majority of their work at job-site locations to fulfill specific contract obligations.

*Id.* (emphasis added).

30.     Accordingly, to count as an "employee" for purposes of the HUBZone program's principal office and 35% HUBZone residency requirements, an individual must work at least 40 hours per month.

31.     The SBA's regulations do not permit an entity to satisfy the HUBZone program's principal office and 35% residency requirements by adding no-show employees to its payroll. To be considered an employee, an individual must actually work at least 40 hours per month.

32.     The SBA's regulations require a qualified HUBZone SBC to immediately notify the SBA of any material change that could affect its eligibility. 13 C.F.R. § 126.501. A material change includes, but is not limited to, a change in the ownership, business structure, or principal office of the SBC, or a failure to meet the 35% HUBZone residency requirement.

**COMPLAINT - 8**

33.     The SBA's regulations also provide that "there shall be a presumption of loss to the United States based on the total amount expended on the contract . . . whenever it is established that a business concern other than a HUBZone SBC willfully sought and received the award by misrepresentation."  13 C.F.R. § 126.900; *see also* 15 U.S.C. § 632(w)(1).

34.     Under the SBA's regulations, the submission of a bid, proposal, application, or offer for a contract intended for award to a HUBZone SBC is deemed an affirmative, willful, and intentional certification of HUBZone SBC status.  13 C.F.R. § 126.900.  Similarly, "[r]egistration on any Federal electronic database for the purpose of being considered for award of a . . . contract . . . as a HUBZone SBC" is deemed an affirmative, willful, and intentional certification of HUBZone SBC status.  *Id.*  Such registration includes certification of HUBZone SBC status in the government's Online Representations and Certifications Application ("ORCA") database and the System for Awards Management ("SAM").

**B.     Northcon's Participation in the HUBZone Program and Defendants' Knowledge of the Governing Regulations**

35.     On or about June 3, 2001, Northcon applied to the SBA to be certified as a HUBZone SBC.  Since at least that date, Northcon and Smith have had actual knowledge that to count as an employee for purposes of the HUBZone program's principal office and 35% residency requirements an individual must work at least 40 hours per month.

36.     As part of the application process, Smith, on behalf of Northcon, certified that:

    a.  The "[n]umber of individuals employed [by Northcon] on a full-time, part-time, or other basis, *so long as that individual works a minimum of 40 hours per month*, at the time of this application who work at the [Hayden Office]" was four.  (Emphasis added.)

**COMPLAINT - 9**

b.  The "[n]umber of individuals employed [by Northcon] on a full-time, part-
time, or other basis, *so long as that individual works a minimum of 40 hours
per month*, who reside in a HUBZone at the time of application" was four.
(Emphasis added.)

c.  Northcon had "researched the resident status of its employees and has
determined that at least 35% of all individuals employed on a full-time, part-
time, or other basis, *so long as that individual works a minimum of 40 hours
per month*, are HUBZone residents."  (Emphasis added.)

d.  Northcon had "calculated the percentage of HUBZone residents utilizing
current employment records as of the date of this application and will ensure
that these records and all other pertinent information are maintained to
document that at least 35% of all individuals employed on a full time, part
time, or other basis, *so long as that individual works a minimum of 40 hours
per month*, are HUBZone residents."  (Emphasis added.)

37.  Smith also signed and submitted to the SBA a HUBZone Empowerment

Contracting Program Certification.  Therein, Smith certified:

The undersigned has reviewed, verified and hereby certifies that:
. . .
I understand that the information submitted may be given to Federal, State and
local agencies for determining violations of the law.  I also understand that under
federal law any person who fails to correct "continuing representations" that are
no longer true, provides a false statement, or knowingly misrepresents the status
of a HUBZone SBC in order to:  1) influence the certification process in any way;
2) maintain eligibility in an SBA program; 3) obtain a contract pursuant to the
Small Business Act; or 4) obtain any benefit under a provision of Federal law that
references the HUBZone Program for a definition of program eligibility, shall be:

a.  Subject to fines of up to $500,000, and imprisonment of up to 10 years, or
both, as set forth in 15 U.S.C. § 645, 18 U.S.C. § 1001, and any other
applicable laws;

**COMPLAINT - 10**

    b.  Subject to civil and administrative penalties, including damages, program termination, suspension and debarment from Government contracting under 15 U.S.C. § 645, 31 U.S.C. §§ 3729-3722, 31 U.S.C §§ 3801-3812, 13 C.F.R. part 145, 48 C.F.R. part 9, and any other applicable laws; and

    c.  Ineligible for participation in programs conducted under the authority of the Small Business Act.

38.    On October 3, 2001, the SBA granted Northcon HUBZone SBC status.

39.    Northcon submitted annual re-certifications to maintain its status as a qualified HUBZone SBC.  For example, on July 26, 2006, Northcon's Vice President and Secretary completed a HUBZone re-certification, and represented therein that:

    a.  The "[n]umber of individuals employed on a full-time, part-time, or other basis, *so long as that individual works a minimum of 40 hours per month*, at the time of this application who work at the [Hayden Office]" was eleven.  (Emphasis added.)

    b.  The "[n]umber of individuals employed [by Northcon] on a full-time, part-time, or other basis, *so long as that individual works a minimum of 40 hours per month*, who reside in a HUBZone at the time of application" was ten.  (Emphasis added.)

    c.  Northcon "has researched the resident status of its employees and has determined that at least 35% of all individuals employed on a full-time, part-time, or other basis, *so long as that individual works a minimum of 40 hours per month*, are HUBZone residents."  (Emphasis added.)

    d.  Northcon "calculated the percentage of HUBZone residents utilizing current employment records as of the date of this application and will ensure that these records and all other pertinent information are maintained to document that at least 35% of all individuals employed on a full time, part time, or other basis, *so*

*long as that individual works a minimum of 40 hours per month*, are HUBZone residents."  (Emphasis added.)

40.     On August 18, 2006, in response to Northcon's annual recertification, the SBA notified Smith that Northcon's status as qualified HUBZone SBC would continue.  Because Northcon's qualification as a HUBZone SBC was based on its principal office being in a HUBZone redesignated area (*i.e.*, Hayden), the SBA's notice specified that Northcon's status as a qualified HUBZone SBC would continue "at least until the results of the 2010 census are publicly released, around mid-2011.  This is provided that your concern remains in compliance with the program's other continuing eligibility requirements."  Accordingly, since at least August 18, 2006, Northcon and Smith were aware that Northcon's status as a HUBZone SBC could expire around mid-2011.

41.     Similarly, in response to Northcon's 2009 recertification, the SBA notified Smith on October 26, 2009, that Northcon's status as a qualified HUBZone SBC would continue "at least until the results of the 2010 census are publicly released, around mid-2011.  This is provided that your concern remains in compliance with the program's other continuing eligibility requirements."

42.     On June 9, 2010, the SBA conducted a site visit at the Hayden Office.  During the site visit, Northcon told the SBA that 20 employees worked in the Hayden Office.

43.     On June 1, 2011, the SBA conducted a site visit at the Hayden Office.  During the site visit, Northcon told the SBA that 25 employees worked in the Hayden Office.

44.     On June 17, 2011, the Department of Air Force issued a pre-solicitation notice for a $25 million HUBZone set-aside contract, Solicitation Number FA4861-11-R-A300.  The notice stated:  "This is Competitive 100% Set Aside Procurement limited to qualified/eligible

**COMPLAINT - 12**

HUBZone small business firms in the Small Business Administration Region 9 Sector."

45.     On June 30, 2011, the Department of Air Force issued the solicitation for a

HUBZone set-aside contract, Solicitation Number FA4861-11-R-A300-0002.  The solicitation

notified potential bidders that "[t]his project is being solicited [sic] as an competitive

HUBZone Set-Aside in accordance with the Small Business Administration, IAW FAR

19.1306."  The solicitation also incorporated by reference FAR 52.219-3 – Notice of Total

HUBZone Set-Aside or Sole Source Award, which includes the following notice:

> The HUBZone small business offeror acknowledges that a prospective HUBZone
> awardee must be a HUBZone small business concern at the time of award of this
> contract.  The HUBZone offeror shall provide the Contracting Officer a copy of the
> notice required by 13 CFR 126.501 if material changes occur before contract award that
> could affect its HUBZone eligibility.  If the apparently successful HUBZone offeror is
> not a HUBZone small business concern at the time of award of this contract, the
> Contracting Officer will proceed to award to the next otherwise successful HUBZone
> small business concern or other offeror.

46.     On August 17, 2011, Smith re-certified Northcon as a HUBZone SBC in ORCA.

Smith specifically certified that Northcon was a HUBZone SBC and "no material change in

ownership and control, principal office, or HUBZone employee percentage has occurred since it

was certified in accordance with 13 CFR part 126 . . ."

47.     On August 22, 2011, Northcon submitted a bid to the Department of Air Force for

HUBZone set-aside contract, Solicitation Number FA4861-11-R-A300-0002.

48.     On September 1, 2011, the SBA informed all firms with principal offices in

expiring HUBZone redesignated areas, including Northcon, that they would lose their status as

HUBZone SBCs on October 1, 2011.  The SBA also informed these firms that they would have

to wait 90 days to reapply for the HUBZone program and would need to meet all HUBZone

eligibility requirements at the time of reapplication to be recertified as a HUBZone SBC.

**COMPLAINT - 13**

49.     Accordingly, no later than September 1, 2011, Northcon and Smith knew that: (a) Northcon's Hayden Office was located in an expiring HUBZone; (b) Northcon would lose its status as a qualified HUBZone SBC on October 1, 2011; and (c) Northcon's loss of HUBZone SBC status would prevent Northcon from being awarded HUBZone set-aside contracts, including, but not limited to, the $25,000,000 HUBZone set-aside contract on which Northcon submitted a bid on August 22, 2019.

**C.     Defendants Establish a Sham Office To Avoid Losing HUBZone SBC Status**

50.     On September 20, 2011, Northcon informed its Hayden Office employees that Northcon was at risk of losing its HUBZone SBC status, but planned to avoid losing HUBZone SBC status by opening an office in Orofino, which was not in an expiring HUBZone.  Northcon told its Hayden Office employees that:

a.   Northcon had hired the law firm Piliero-Mazza for counsel and advice;

b.   Northcon was not asking anyone to relocate to Orofino;

c.   Northcon did not anticipate reducing its Hayden Office staff;

d.   Northcon would need 26 employees in Orofino to maintain its HUBZone SBC status.

51.     On September 23, 2011, Smith emailed the SBA, stating:

In accordance with the direction provided by the HUBZone help desk, this email will provide notice of a material change and that Northcon, Inc. has relocated our principal office effective September 21, 2011. . . .

Old Address of Principal Office:  Northcon, Inc. 10615 N. Government Way Hayden, ID 83835 . . .

New Address of Principal Office (effective September 21, 2011) Northcon, Inc. 930 Michigan Ave Unit C PO Box #47 Orofino, ID 83544.

**COMPLAINT - 14**

52.     Smith's representation that Northcon had relocated its principal office to Orofino effective September 21, 2011, was knowingly false:

    a.   Smith knew that Northcon had not relocated its principal office to Orofino; no employees, equipment, or operations had been moved from Hayden to Orofino.

    b.   Smith had actual knowledge of the regulations governing the HUBZone program, including the regulations defining "principal office" and "employee."

    c.   Smith knew that the Orofino Office was not Northcon's principal office because it was not "the location where the greatest number of the [Northcon's] employees at any one location perform their work," 13 C.F.R. § 126.103, because no employees yet worked at the Orofino Office.

    d.   Smith knew that Northcon had not even begun interviewing potential employees for the Orofino Office.

53.     Smith's false representation that Northcon had relocated its principal office to Orofino effective September 21, 2011, was made for the purpose of influencing the action of the SBA and for the purpose of obtaining things of value, *i.e.*, continued certification as qualified HUBZone SBC and HUBZone set-aside contracts.

54.     On September 29, 2011, the SBA notified Northcon that as a result of Northcon's notice of material change in principal office location the SBA was conducting a program examination to determine Northcon's continuing compliance with HUBZone Program requirements.  The SBA's notice reminded Northcon that to be eligible for the HUBZone program it must:  (a) "Have a principal office in a qualified HUBZone, where principal office is

**COMPLAINT - 15**

defined in 13 C.F.R. § 126.103 as the location where the greatest number of the concern's employees at any one location perform their work;" and (b) "Have at least 35% of your employees (regardless of where the employee works) reside in a HUBZone."  Among other things, the SBA's notice required Northcon to update its Central Contractor Registration ("CCR") profile.

55.     On September 29, 2011, Smith updated Northcon's CCR profile, registering Northcon's office as being in Orofino.  Smith's representation that Northcon's principal office was located in Orofino was knowingly false:

a.   Smith had actual knowledge of the regulations governing the HUBZone program, including the regulations defining "principal office" and "employee."

b.   Smith knew that the Orofino Office was not Northcon's principal office because it was not "the location where the greatest number of the concern's employees at any one location perform their work," 13 C.F.R. § 126.103.

c.   For the four-week pay period ending October 2, 2011 (i.e., September 5, 2011-October 2, 2011), sixteen individuals worked at least 40 hours per month at the Hayden Office.  In contrast, only two individuals on Northcon's Orofino payroll purportedly worked at least 40 hours per month and neither of those individuals performed their work at the Orofino Office.

56.     On September 29, 2011, the United States Air Force awarded Northcon HUBZone set-aside contract, Solicitation Number FA4861-11-R-A300-0002, Contract Number FA4861-11-D-A300.

**COMPLAINT - 16**

57.     On or about October 17, 2011, the SBA sent Northcon a notice of proposed decertification from the HUBZone program.

58.     On November 4, 2011, Smith sent the SBA a letter in response to the SBA's notice of proposed decertification.  Therein, Smith identified individuals as employees of Northcon for the purpose of satisfying the HUBZone program's principal office and 35% residency requirements.  Smith's letter was false in that it failed to disclose that the listed employees did not actually work the 40 hours per month required to be considered employees for purposes of satisfying the HUBZone program's principal office and 35% residency requirements.  Smith sent his false November 4, 2011 letter for the purpose of influencing the action of the SBA and for the purpose of obtaining things of value, *i.e.*, continued certification as HUBZone SBC and HUBZone set-aside contracts.

59.     On November 15, 2011, Defendants, through the law firm Piliero-Mazza, asserted in a letter to the SBA that Northcon had moved its principal office to Orofino, arguing:

> The documents provided with this submission address your requests and demonstrate that Northcon's principal office was located in a currently qualified HUBZone before October 1, 2011.  As such, the proposed decertification of Northcon is unwarranted and should be withdrawn.
>
> Northcon was surprised to receive the Notice of Proposed Decertification because, prior to October 1, 2011, Northcon had notified the U.S. Small Business Administration ("SBA") of its change in office address.  Specifically, on September 23, 2011, Northcon provided the SBA with notice of the material change to its new principal office.  This notice informed the SBA that Northcon moved its principal office from the prior location in Hayden, Idaho, which was in a redesignated area, to the new location in Orofino, Idaho, which is in a valid HUBZone and within the Nez Perce Indian Reservation. . . .
>
> The change in office location reflects Northcon's quick action to remain fully compliant with all HUBZone Program regulations. . . . Sixteen Northcon employees currently work at least 40 hours per month from the Orofino office, the most of any Northcon office location.  The employees who work from the Orofino office handle many critical functions for the company, including marketing and business development, payroll functions and timekeeping, compliance and internal auditing, and project management and estimating."

**COMPLAINT - 17**

60.     The enclosures to Defendants' November 15, 2011 letter to the SBA evidence Defendants' knowledge that an individual must actually work at least 40 hours per month to be counted as an employee for purposes of the HUBZone program's principal office and 35% residency requirements.  For example, the enclosures included the following note:  "Please note, salaried employees show up on the payroll records as having worked zero hours, but are expected to work a minimum of 40 hours per week.  This is reflected in the employee spreadsheet found at Exhibit A."

61.     Defendants' November 15, 2011 letter was knowingly false.  Defendants knew that Northcon had not moved its principal office to Orofino.  Defendants also knew that 16 individuals did not work at least 40 hours per month from the Orofino Office.  Rather, Defendants paid individuals for 40 hours per month notwithstanding the fact that those individuals did not work 40 hours per month.  Defendants did so to create the false appearance that Northcon's principal office was located in Orofino.  Northcon's assertion that employees in the Orofino office handled many critical functions for the company was also false.

62.     The false statements in Defendants' November 15, 2011 letter were made for the purpose of influencing the action of the SBA and for the purpose of obtaining things of value, *i.e.*, continued certification as HUBZone SBC and HUBZone set-aside contracts.

63.     On December 2, 2011, the SBA notified Smith that it was "conducting a program examination to verify that NORTHCON, INC. is continuing to satisfy all HUBZone eligibility requirements . . . ."  The SBA's notification reminded Northcon and Smith that to be eligible for the HUBZone program Northcon was required to:  (a) "Have a principal office in a qualified HUBZone, where principal office is defined in 13 C.F.R. § 126.103 as the location where the greatest number of the concern's employees at any one location perform their work."; and

**COMPLAINT - 18**

(b) "Have at least 35% of your employees (regardless of where the employee works) reside in a HUBZone."

64.     On December 12, 2011, Northcon's Director of Finance, Sarah Kuest, submitted a Program Examination Form to the SBA.  Therein, Northcon falsely represented that: (a) Northcon's principal office was located in Orofino; (b) the "[n]umber of individuals employed on a full-time basis, so long as that individual works a minimum of 40 hours per month, at the time of this application who work at the [Orofino Office]" was 20; and (c) the "[n]umber of individuals employed on a full-time, part-time, or other basis, so long as that individual works a minimum of 40 hours per month, who reside in a HUBZone at time of this response" was 30.  These representations were false because the individuals that Northcon counted as employees did not actually work 40 hours per month.  Northcon's false statements were made for the purpose of influencing the action of the SBA and for the purpose of obtaining things of value, *i.e.*, continued certification as HUBZone SBC and HUBZone set-aside contracts.

65.     On December 30, 2011, Smith signed a HUBZone Program Certification for Applicants Owned by U.S. Citizens, certifying that Northcon's principal office was located in a HUBZone.  Northcon submitted this certification to the SBA on or about January 10, 2012. Smith's certification that Northcon's principal office was located in a HUBZone was knowingly false:

      a.   Smith had actual knowledge of the regulations governing the HUBZone program, including the regulations defining "principal office" and "employee."

      b.   Smith knew that the Orofino Office was not Northcon's principal office because it was not "the location where the greatest number of the concern's employees at any one location perform their work," 13 C.F.R. § 126.103.

**COMPLAINT - 19**

    c.   Smith knew that the Hayden Office was Northcon's principal office because it was "the location where the greatest number of the concern's employees at any one location perform their work," 13 C.F.R. § 126.103.

    d.   Smith knew that as of October 1, 2011, the Hayden Office was not located in a HUBZone.

66.    Smith's false certification on December 30, 2011, that Northcon's principal office was located in Orofino was made for the purpose of influencing the action of the SBA and for the purpose of obtaining things of value, *i.e.*, continued certification as HUBZone SBC and HUBZone set-aside contracts.

67.    On January 12, 2012, Smith sent a letter to the SBA stating:

> I am pleased to provide the Small Business Administration ("SBA") with Northcon, Inc.'s ("Northcon") following responses and documents in reply to your office's request for documentation in connection with Northcon's HubZone Program Examination, which we received on December 29, 2011. . . .

> This Program Examination originated in response the SBA's proposed decertification of Northcon, based upon the recent expiration of many HUBZone redesignated districts. *Northcon had changed its principal office location prior to the October 1, 2011 deadline*, and on November 15, 2011, submitted the proper documentation to the SBA confirming its new principal office location in Orofino, Idaho, in response the SBA's eligibility request. This led the SBA to initiate this Program Examination, to which Northcon now responds. The documents provided with this submission address the December 29th document requests from the SBA. The enclosed documents, along with the documents we provided on November 15th in response to the redesignation project, establish that Northcon's principal office is located in a qualified HUBZone, and that Northcon maintains a HUBZone employee percentage greater than 35%.

> . . . Northcon met the 35% HUBZone residency requirement in both November and December 2011 . . . in November, 36.1% of our employees resided in a HUBZone, and in December, that figure was 35.8%. *When calculating the total number of Northcon's employees and HUBZone employees each month, we have included only those individuals who worked at least 40 hours in the given month.*

(Emphasis added).

68.     Smith's January 12, 2012 letter was knowingly false because Smith knew:
(a) Northcon had not moved its principal office to Orofino; and (b) Defendants included
individuals that had not actually worked 40 hours in a given month when calculating the total
number of Northcon's employees and HUBZone employees each month.  Defendants included
individuals who were paid for 40 hours per month but did not actually work at least 40 hours per
month.  Defendants placed these individuals on Northcon's payroll to create the false appearance
that Northcon complied with the HUBZone program's principal office and 35% residency
requirements.

69.     The false statements in Smith's January 12, 2012 letter were made for the purpose
of influencing the action of the SBA and for the purpose of obtaining things of value, *i.e.*,
continued certification as HUBZone SBC and HUBZone set-aside contracts.

70.     On March 12, 2012, the SBA notified Northcon that it had completed a full
document review of all HUBZone eligibility criteria as a result of the HUBZone Program
Examination.  As a result of Northcon's and Smith's false representations that Northcon
complied with the HUBZone program's principal office and 35% residency requirements, the
SBA determined that Northcon's status as a qualified HUBZone SBC would continue.  The SBA
would not have continued Northcon's status as a qualified HUBZone SBC had it known the
truth, *i.e.*, that Northcon's principal office was not in a HUBZone and Northcon did not satisfy
the HUBZone program's 35% residency requirement.

### D.     Defendants' False ORCA and SAM Certifications

71.     "At the time a qualified HUBZone SBC submits its initial offer, and where
applicable its final offer, on a specific HUBZone contract, it must certify to the [Contracting
Officer] that:  (1) it is a qualified HUBZone SBC that appears on SBA's List; and (b) There has

been no material change in its circumstances since the date of certification shown on the List that

could affect its HUBZone eligibility . . . ." *See* 13 C.F.R. § 126.601(d) (version effective

September 14, 2009 to December 30, 2013).

72.     HUBZone SBC's satisfied 13 C.F.R. § 126.601(d) by certifying their HUBZone

SBC status in the SAM database (previously in the ORCA database), which government

contracting officers rely upon to confirm a potential awardee is a qualified HUBZone SBC.

73.     On April 5, 2012, Smith certified in the ORCA database that:

I have read each of the [Federal Acquisition Regulation] and [Defense Federal
Acquisition Regulation] provisions below.  By submitting this certification, I, Randall
Smith, am attesting to the accuracy of the representations and certifications contained
herein, including the entire [North American Industry Classification System] table.  I
understand that I may be subject to penalties if I misrepresent NORTHCON, INC. in any
of the below representations or certifications to the Government. . . .

The offeror represents, as part of its offer, that – (i) It is . . . a HUBZone small business
concern listed, on the date of this representation, on the List of Qualified HUBZone
Business Concerns maintained by the Small Business Administration, and no material
change in ownership and control, principal office, or HUBZone employee percentage has
occurred since it was certified by the Small Business Administration in accordance with
13 CFR part 126 . . . .

Under 15 U.S.C. 645(d), any person who misrepresents a firm's status as a business
concern that is small, HUBZone small, small disadvantaged, service-disabled veteran-
owned small, economically disadvantaged woman-owned small, or women-owned small
eligible under the WOSB Program in order to obtain a contract to be awarded under the
preference programs established pursuant to section 8, 9, or 15, 31, and 36 of the Small
Business Act or any other provision of Federal law that specifically references section
8(d) for a definition of program eligibility, shall-

    (i) Be punished by imposition of fine, imprisonment, or both;
    (ii) Be subject to administrative remedies, including suspension and debarment;
    and
    (iii) Be ineligible for participation in programs conducted under the authority of
    the Act.

**COMPLAINT - 22**

74.     Smith's April 5, 2012 ORCA certification was knowingly false because he knew that Northcon's principal office was no longer in a HUBZone and that Northcon was not in compliance with the HUBZone Program's 35% residency requirement.

75.     Smith's false April 5, 2012 ORCA certification was made for the purpose of influencing the action of the SBA and for the purpose of obtaining things of value, *i.e.*, continued certification as HUBZone SBC and HUBZone set-aside contracts.

76.     On March 4, 2013, Northcon certified in the SAM database that:

I have read each of the FAR and DFARS provisions presented below.  By submitting this certification, I, Sarah Kuest, am attesting to the accuracy of the representations and certifications contained herein, including the entire NAICS table.  I understand that I may be subject to penalties if I misrepresent NORTHCON, INC. in any of the below representations or certifications to the Government. . . .

The offeror represents, as part of its offer, that – (i) It is . . . a HUBZone small business concern listed, on the date of this representation, on the List of Qualified HUBZone Business Concerns maintained by the Small Business Administration, and no material change in ownership and control, principal office, or HUBZone employee percentage has occurred since it was certified by the Small Business Administration in accordance with 13 CFR part 126 . . . .

77.     Northcon's March 4, 2013 SAM certification was knowingly false because Northcon knew that its principal office was not in a HUBZone and that it was not in compliance with the HUBZone Program's 35% residency requirement.

78.     Northcon's false March 4, 2013 SAM certification was made for the purpose of influencing the action of the SBA and for the purpose of obtaining things of value, *i.e.*, continued certification as HUBZone SBC and HUBZone set-aside contracts.

79.     On May 20, 2013, Northcon again certified in the SAM database that:

I have read each of the FAR and DFARS provisions presented below.  By submitting this certification, I, Sarah Kuest, am attesting to the accuracy of the representations and certifications contained herein, including the entire NAICS table.  I understand that I may be subject to penalties if I misrepresent NORTHCON, INC. in any of the below representations or certifications to the Government. . . .

**COMPLAINT - 23**

The offeror represents, as part of its offer, that – (i) It is . . . a HUBZone small business concern listed, on the date of this representation, on the List of Qualified HUBZone Business Concerns maintained by the Small Business Administration, and no material change in ownership and control, principal office, or HUBZone employee percentage has occurred since it was certified by the Small Business Administration in accordance with 13 CFR part 126 . . . .

80.     Northcon's May 20, 2013 SAM certification was knowingly false because

Northcon knew that its principal office was not in a HUBZone and that it was not in compliance

with the HUBZone Program's 35% residency requirement.

81.     Northcon's false May 20, 2013 SAM certification was made for the purpose of

influencing the action of the SBA and for the purpose of obtaining things of value, *i.e.*, continued

certification as HUBZone SBC and HUBZone set-aside contracts.

82.     On September 6, 2013, Northcon again certified in the SAM database that:

I have read each of the FAR and DFARS provisions presented below.  By submitting this certification, I, Sarah Kuest, am attesting to the accuracy of the representations and certifications contained herein, including the entire NAICS table.  I understand that I may be subject to penalties if I misrepresent NORTHCON, INC. in any of the below representations or certifications to the Government. . . .

The offeror represents, as part of its offer, that – (i) It is . . . a HUBZone small business concern listed, on the date of this representation, on the List of Qualified HUBZone Business Concerns maintained by the Small Business Administration, and no material change in ownership and control, principal office, or HUBZone employee percentage has occurred since it was certified by the Small Business Administration in accordance with 13 CFR part 126 . . . .

83.     Northcon's September 6, 2013 SAM certification was knowingly false because

Northcon knew that its principal office was not in a HUBZone and that it was not in compliance

with the HUBZone Program's 35% residency requirement.

84.     Northcon's false September 6, 2013 SAM certification was made for the purpose

of influencing the action of the SBA and for the purpose of obtaining things of value, *i.e.*,

continued certification as HUBZone SBC and HUBZone set-aside contracts.

**COMPLAINT - 24**

**E.    The HUBZone Set-aside Contracts that Defendants Obtained by Fraud**

      **a.   Contract Number W912HP-12-D-0003**

85.    On May 22, 2012, Northcon submitted a bid in response to United States Army HUBZone set-aside contract, Solicitation Number W912HP-12-R-0011-0003.  The solicitation notified potential offerors that:  "THIS PROCUREMENT IS BEING ISSUED AS A 100% HUB-ZONE SET ASIDE."  The solicitation also incorporated by reference FAR 52.219-3, Notice of HUBZone Set-Aside or Sole Source Award.

86.    Under 13 C.F.R. § 126.900, the submission of this bid was an affirmative, willful, and intentional certification of HUBZone SBC status.  Northcon's certification of its HUBZone SBC status was knowingly false because Northcon knew that it did not satisfy the HUBZone program's principal office and 35% residency requirements.  Northcon's false certification of its HUBZone SBC status was made for the purpose of influencing the action of the SBA and for the purpose of obtaining a thing of value, *i.e.*, a HUBZone set-aside contract.

87.    On June 27, 2012, the United States Army awarded Northcon HUBZone Set-aside Contract Number W912HP-12-D-0003.

88.    The United States Army would not have awarded Northcon Contract Number W912HP-12-D-0003 had it known the truth, *i.e.*, that Northcon was not a qualified HUBZone SBC and the SBA's continuing certification of Northcon as a HUBZone SBC was the result of Defendants' fraud.

89.    Defendants presented, or caused to be presented, 351 separate false claims for payment under Contract Number W912HP-12-D-0003, and were paid $11,901,765.29.

**COMPLAINT - 25**

### b.   Contract Number HSFLGL-12-C-00008

90.     On August 17, 2012, Northcon submitted a bid in response to Department of Homeland Security HUBZone set-aside contract, Solicitation Number HSFLGL-12-C-00008. The solicitation incorporated by reference FAR 52.219-3, Notice of HUBZone Set-Aside or Sole Source Award.

91.     Under 13 C.F.R. § 126.900, the submission of this bid was an affirmative, willful, and intentional certification of HUBZone SBC status.  Northcon's certification of its HUBZone SBC status was knowingly false because Northcon knew that it did not satisfy the HUBZone program's principal office and 35% residency requirements.  Northcon's false certification of its HUBZone SBC status was made for the purpose of influencing the action of the SBA and for the purpose of obtaining a thing of value, *i.e.*, a HUBZone set-aside contract.

92.     On September 28, 2012, the Department of Homeland Security awarded Northcon HUBZone Set-aside Contract Number HSFLGL-12-C-00008.

93.     The Department of Homeland Security would not have awarded Northcon Contract Number HSFLGL-12-C-00008 had it known the truth, *i.e.*, that Northcon was not a qualified HUBZone SBC and the SBA's continuing certification of Northcon as a HUBZone SBC was the result of Defendants' fraud.

94.     Defendants presented, or caused to be presented, 24 separate false claims for payment under Contract Number HSFLGL-12-C-00008, and were paid over $10,799,366.79.

### c.   Contract Number W91249-13-D-0001

95.     On August 30, 2012, Smith, on behalf of Northcon, submitted a bid in response to United States Army HUBZone set-aside contract, Solicitation Number W91249-12-R-0002.

**COMPLAINT - 26**

The solicitation notified potential offerors that:  "This project is set-aside for certified Hubzone firms."  The solicitation also included the following:

> Notice.  The HUBZone small business offeror acknowledges that a prospective HUBZone awardee must be a HUBZone small business concern at the time of award of this contract.  The HUBZone offeror shall provide the Contracting Officer a copy of the notice required by 13 CFR 126.501 if material changes occur before contract award that could affect its HUBZone eligibility.  If the apparently successful HUBZone offeror is not a HUBZone small business concern at the time of award of this contract, the Contracting Officer will proceed to award to the next otherwise successful HUBZone small business concern or other offeror.

96.     Under 13 C.F.R. § 126.900, the submission of this bid was an affirmative, willful, and intentional certification of HUBZone SBC status.  Smith's certification of Northcon's HUBZone SBC status was knowingly false because he knew that Northcon did not satisfy the HUBZone program's principal office and 35% residency requirements.  Smith's false certification of Northcon's HUBZone SBC status was made for the purpose of influencing the action of the SBA and for the purpose of obtaining a thing of value, *i.e.*, a HUBZone set-aside contract.

97.     On November 1, 2012, the United States Army awarded Northcon HUBZone Set-aside Contract Number W91249-13-D-0001.

98.     The United States Army would not have awarded Northcon Contract Number W91249-13-D-0001 had it known the truth, *i.e.*, that Northcon was not a qualified HUBZone SBC and the SBA's continuing certification of Northcon as a HUBZone SBC was the result of Defendants' fraud.

99.     Defendants presented, or caused to be presented, 403 separate false claims for payment under Contract Number W91249-13-D-0001, and were paid $22,371,912.64.

**COMPLAINT - 27**

### d.   Contract Number HSFLGL-13-C-00013

100.    On September 3, 2013, Smith, on behalf of Northcon, submitted a bid in response to Department of Homeland Security HUBZone set-aside contract, Solicitation Number HSFLGL-13-C-00013.  The solicitation notified potential offerors that:  "This procurement is a 100% Small Business HubZone Set-Aside."  The solicitation also incorporated by reference FAR 52.219-3, Notice of HUBZone Set-Aside or Sole Source Award.

101.    Under 13 C.F.R. § 126.900, the submission of this bid was an affirmative, willful, and intentional certification of HUBZone SBC status.  Smith's certification of Northcon's HUBZone SBC status was knowingly false because he knew that Northcon did not satisfy the HUBZone program's principal office and 35% residency requirements.  Smith's false certification of Northcon's HUBZone SBC status was made for the purpose of influencing the action of the SBA and for the purpose of obtaining a thing of value, *i.e.*, a HUBZone set-aside contract.

102.    On September 19, 2013, the Department of Homeland Security awarded Northcon a HUBZone Set-aside Contract Number HSFLGL-13-C-00013.

103.    The Department of Homeland Security would not have awarded Northcon Contract Number HSFLGL-13-C-00013 had it known the truth, *i.e.*, that Northcon was not a qualified HUBZone SBC and the SBA's continuing certification of Northcon as a HUBZone SBC was the result of Defendants' fraud.

104.    Defendants presented, or caused to be presented, 20 separate false claims for payment under Contract Number HSFLGL-13-C-00013, and were paid over $6,345,890.86.

### e.  Contract Number W912DW-13-C-0047

105.    On September 10, 2013, Smith, on behalf of Northcon, submitted a bid in response to United States Army HUBZone set-aside contract, Solicitation Number W912DW-13-B-0006.  The solicitation included the following notice:

> The HUBZone small business offeror acknowledges that a prospective HUBZone awardee must be a HUBZone small business concern at the time of award of this contract. The HUBZone offeror shall provide the Contracting Officer a copy of the notice required by 13 CFR 126.501 if material changes occur before contract award that could affect its HUBZone eligibility. If the apparently successful HUBZone offeror is not a HUBZone small business concern at the time of award of this contract, the Contracting Officer will proceed to award to the next otherwise successful HUBZone small business concern or other offeror.

106.    Under 13 C.F.R. § 126.900, the submission of this bid was an affirmative, willful, and intentional certification of HUBZone SBC status.  Smith's certification of Northcon's HUBZone SBC status was knowingly false because he knew that Northcon did not satisfy the HUBZone program's principal office and 35% residency requirements.  Smith's false certification of Northcon's HUBZone SBC status was made for the purpose of influencing the action of the SBA and for the purpose of obtaining a thing of value, *i.e.*, a HUBZone set-aside contract.

107.    On September 26, 2013, the United States Army awarded Northcon HUBZone Set-aside Contract Number W912DW-13-C-0047.

108.    The United States Army would not have awarded Northcon Contract Number W912DW-13-C-0047 had it known the truth, *i.e.*, that Northcon was not a qualified HUBZone SBC and the SBA's continuing certification of Northcon as a HUBZone SBC was the result of Defendants fraud.

109.    Defendants presented, or caused to be presented, 14 separate false claims for payment under Contract Number W912DW-13-C-0047, and were paid over $1,380,171.00.

**COMPLAINT - 29**

F.       **Northcon's Decertification as a HUBZone SBC**

110.    On October 25, 2013, the SBA sent Northcon a notice of proposed decertification

from HUBZone program.

111.    Northcon's November 25, 2013 response to proposed decertification evidences

Defendants' knowledge that an individual must work at least 40 hours per month to be counted

as an employee for purposes of the HUBZone program's principal office and 35% residency

requirements:

>    a.   Volume 1, Tab 1 of Northcon's response, titled "List of Employees by Office and
>
>    Jobsite" states that "[t]his spreadsheet includes all of the information the SBA
>
>    requested in its October 25, 2013 letter, including the hours and days of operation
>
>    for each office location, *how much time each employee spends at each location*,
>
>    and the type of employee (i.e., salaried, hourly, etc.).  Of the 67 employees who
>
>    worked out of Northcon's office locations in August 2013, 46 worked from the
>
>    Orofino principal office location.  Moreover, of the 66 employees who worked
>
>    out of Northcon's office locations in September 2013, 44 worked from the
>
>    Orofino principal office location.  Because these figures represent the greatest
>
>    number of Northcon employees at any one office location, Orofino is Northcon's
>
>    principal office for HUBZone eligibility. . . . *When calculating the total number*
>
>    *of Northcon's employees and HUBZone employees each month, we included only*
>
>    *those individuals who worked at least 40 hours in a given month.  Individuals who*
>
>    *worked less than 40 hours are listed on the spreadsheet, but they are highlighted*
>
>    *in pink and they were not included in the count of employees for determining*
>
>    *HUBZone compliance*."  (Emphasis added.)

b.  Volume 1, Tab 6 of Northcon's response, titled "Payroll Records" states:  "Please note that the majority of Northcon's salaried employees show up on the payroll records as having worked zero hours, but they are expected to work a minimum of 40 hours per week; this is reflected in the employee spreadsheet, found at Tab 1."

112.    Northcon's November 25, 2013 response was knowingly false in that it indicated numerous individuals worked 40 hours per month at the Orofino Office when those individuals either did not work at all or only worked 16 hours per month.  Northcon included these individuals to create the false impression that the Orofino Office was Northcon's principal office and that Northcon satisfied the HUBZone program's 35% residency requirement.

113.    The false statements in Northcon's November 25, 2013 response to the SBA's notice of proposed decertification were made for the purpose of influencing the action of the SBA and for the purpose of obtaining things of value, *i.e.*, continued certification as HUBZone SBC and HUBZone set-aside contracts.

114.    Northcon's November 25, 2013 response also revealed that Defendants' prior representations that Northcon moved its principal office to Orofino effective September 21, 2011, were false.  Volume 4, Tab 1 of Northcon's November 25, 2013 response states:

The relevant date covered in this Volume 4 is the date of contract award for Contract No. FA61-11-D-A300, which was September 28, 2011. . . . . During the time period covered by this Volume, Northcon's HUBZone principal office was located in Hayden, Idaho, which was a qualified HUBZone at that time.  (Hayden lost its HUBZone redesignated area status as of October 1, 2011.)

115.    The spreadsheet of employee hours and work locations included with Volume 4, Tab 1 of Northcon's November 25, 2013 response demonstrates that, contrary to Northcon's prior representation that it moved its principal office to Orofino "effective September 21, 2011"

**COMPLAINT - 31**

and "prior to the October 1, 2011 deadline," Northcon had not moved its principal office to Orofino.

116.    On December 12, 2013, the SBA notified Northcon of a HUBZone SBC status protest filed by MTNT Development, Inc. ("MTNT") in connection with Solicitation No. HSFLGL-13-R-00051.  MTNT alleged in its protest that Northcon's principal office was in Hayden and, therefore, not located in a qualified HUBZone.  The SBA requested that Northcon provide documentation evidencing that its principal office was located in a HUBZone on the date that it submitted its offer in response to Solicitation No. HSFLGL-13-R-00051.  The SBA requested that Northcon submit:

- company payroll records showing all employees and number of hours worked per week at the time Northcon submitted its offer and at the present time;
- if there are any employees who worked less than 40 hours during the week when the offer was submitted or at the present time, Northcon must provide the following to demonstrate that those employees worked at least 40 hours in a month as of the date of the offer and present time . . . .
- records indicating the location at which each employee of Northcon performed his/her work at the time Northcon submitted its offer and at the present time . . . .

117.    On December 18, 2013, Northcon, through counsel, sent a letter to the SBA responding to the SBA's December 12, 2018 letter.  The letter and enclosed exhibits evidence that Northcon and Smith:  (1) had actual knowledge of the regulations governing the HUBZone program, including that an individual must work at least 40 hours per month, not merely be paid for at least 40 hours per month, to count as an employee for purposes of the HUBZone program's principal office and 35% residency requirements; and (2) intentionally perpetrated a fraud by lying about Northcon's compliance with those regulations.  For example, the letter stated:

> Specifically, the HUBZONE "principal office" is:

>> [T]he location where the greatest number of the concern's employees at one location perform their work.  However, for those concerns whose "primary industry" (see 13 CFR 121.107) is service or construction (see

**COMPLAINT - 32**

> 13 CFR 121.201), the determination of principal office excludes the concern's employees who perform the majority of their work at job-site locations to fulfill specific contract obligations.

13 C.F.R. § 126.103.

> Although the SBA's definition of principal office does not require a HUBZone firm to perform "principal" functions in that office, Northcon has always ensured the Orofino office would fulfill important functions for the company. *All of the people who work for Northcon in Orofino are expected to, and do, show up for work when scheduled and perform administrative, management, and equipment repair and fabrication functions discussed above.*

(Emphasis added.)

118.     Northcon's December 18, 2013 assertion that "[a]ll of the people who work for Northcon in Orofino are expected to, and do, show up for work when scheduled and perform administrative, management, and equipment repair and fabrication functions discussed above" was knowingly false.  Northcon knew that the majority of individuals on its Orofino Office payroll did not work at all, much less work at least 40 hours per month as required to count as an employee for purposes of the HUBZone program's principal office and 35% residency requirement.

119.     Enclosed with Northcon's December 18, 2013 letter was a declaration signed by Smith.  Therein, Smith stated:

> I am the President of Northcon, Inc. ("Northcon").  In this capacity, I supervise and am responsible for the management and day-to-day operation of Northcon including such functions as preparation of the company's payroll. . . .
> Based on the payroll reports we have provided for July, August, and November 2013, Northcon was in full compliance with the principal office and residency requirements during those months.

120.     Smith's declaration was knowingly false and misleading because the payroll reports included individuals who were paid for 40 hours per month but did not actually work at

**COMPLAINT - 33**

least 40 hours per month.  Rather, these individuals were placed on the Orofino Office's payroll to create the false impression that Northcon's principal office was located in a HUBZone.

121.    The false statements in Northcon's December 18, 2013 letter and Smith's December 18, 2013 declaration were made for the purpose of influencing the action of the SBA and for the purpose of obtaining things of value, *i.e.*, continued certification as HUBZone SBC and HUBZone set-aside contracts.

122.    On December 20, 2013, the SBA visited both the Hayden Office and the Orofino Office:

      a.   The Orofino Office was a single-story, two-room, office space of about 400 square feet.

      b.   Only two employees were working at the Orofino Office.

      c.   The Hayden Office was a two story office building with both office space and an enclosed mechanical/garage space.  There were five computer work stations on the main floor; a separate office space for the Owner/CEO, and sufficient office furniture to accommodate additional workers.

      d.   At least six employees were seen working in the Hayden Office.

      e.   Northcon employees in the Hayden Office stated that approximately 25 people worked at the Hayden Office.

123.    Based on the December 20, 2013 site visits and its review of the documents submitted by Northcon on December 18, 2013, the SBA concluded that the Orofino Office was not Northcon's principal office.  Accordingly, effective December 31, 2013, the SBA decertified Northcon as a HUBZone SBC.

**COMPLAINT - 34**

### G.     Tolling Agreements

124.    On June 6, 2016, October 18, 2016, April 4, 2017, September 29, 2017, February 7, 2018, May 15, 2018, October 31, 2018; and March 26, 2019, Defendants executed a series of tolling agreements, tolling the statutes of limitations, if any, applicable to federal civil violations relating to:

      a.   Any attempt or scheme to defraud the U.S. Army, the U.S. Air Force, the U.S. Department of Homeland Security, the U.S. Small Business Administration, and the U.S. General Services Administration through the HUBZone program by Northcon, Smith, and/or other Northcon employees;

      b.   Any intentionally false or misleading statements, promises, representations, or omissions of material fact, oral or written, related to Northcon's (i) participation in the HUBZone program or (ii) contracts and/or awards obtained thereunder; and

      c.   Any intentionally false or misleading statements, representations, or omissions of material fact, oral or written, made during the United States' investigation of Northcon's participation in the HUBZone program.

125.    These tolling agreements expressly applied to FCA and FIRREA claims, and tolled the running of the statutes of limitations applicable to such claims from May 25, 2016 through November 26, 2019.

126.    In addition to federal civil violations, the February 7, 2018 through March 26, 2019 tolling agreements expressly applied to state law claims, including unjust enrichment, and tolled the running of the statutes of limitations applicable to such claims from January 25, 2018 through November 26, 2019.

**COMPLAINT - 35**

## Causes of Action

### Count I:  False or Fraudulent Claims
**(False Claims Act, 31 U.S.C. § 3729(a)(1)(A))**

127.    Plaintiff incorporates all previous paragraphs as if fully set forth herein.

128.    Through the acts described above, Defendants knowingly presented, or caused to be presented, to an officer or employee of the United States, false or fraudulent claims in violation of the FCA, 31 U.S.C. § 3729(a)(1)(A).  Specifically, Defendants knowingly presented, or caused to be presented over 500 false claims for payment under HUBZone Set-Aside contracts that Defendants obtained by fraud.

129.    The United States would not have paid these claims if it had known that Northcon obtained the underlying HUBZone contracts by falsely and fraudulently representing that Northcon was a qualified HUBZone entity.

130.    Each false or fraudulent claim that Defendants presented, or caused to be presented, constitutes a separate violation of the FCA.

131.    By virtue of the false or fraudulent claims presented, or caused to be presented, by Defendants, the United States of America sustained damages in an amount to be determined at trial, and, therefore, is entitled to treble damages under the FCA in an amount to be proven at trial, plus a civil penalty of $5,500 to $11,000 for each claim presented on or before November 2, 2015 and a civil penalty of $11,181 to $22,263 for each claim presented after November 2, 2015.

### Count II:  False Records and Statements
**(False Claims Act, 31 U.S.C. § 3729(a)(1)(B))**

132.    Plaintiff incorporates all previous paragraphs as if fully set forth herein.

133.    Through the acts described above, Defendants knowingly made, used, or cause to be made or used false records and statements material to false or fraudulent claims in violation of

**COMPLAINT - 36**

31 U.S.C. § 3729(a)(1)(B), including, but not limited to, records and statements falsely indicating that:  (a) Northcon's principal office was located in Orofino, Idaho; (b) Northcon satisfied the HUBZone program's 35% residency requirement; (c) Northcon was a qualified HUBZone SBC; and (d) individuals worked at least 40 hours per month at specified locations. Defendants knowingly made, used, or caused to be made or used these false records and statements to get their false or fraudulent claims paid by the United States Government.

134.    These false records and statements are material because the United States would not have certified Northcon as a HUBZone SBC, awarded Northcon HUBZone contracts, or paid claims submitted by Northcon under HUBZone contracts had it known that:  (a) Northcon's principal office was not located in Orofino, Idaho; (b) Northcon did not satisfy the HUBZone program's 35% residency requirement; and (3) Northcon was not a qualified HUBZone SBC.

135.    Each false record or statement that Defendants made, used, or caused to be made or used, constitutes a separate violation of the FCA.

136.    By virtue of the false records and statements that Defendants made, used, or caused to be made or used to get false HUBZone contract claims paid, the United States of America sustained damages and, therefore, is entitled to treble damages under the FCA in an amount to be proven at trial, plus a civil penalty of $5,500 to $11,000 for each violation on or before November 2, 2015 and a civil penalty of $11,181 to $22,263 for each violation after November 2, 2015.

### Count III: FIRREA
**(12 U.S.C. §§ 1833a(a), (c)(3))**

137.    Plaintiff incorporates all previous paragraphs as if fully set forth herein.

138.    By reason of the foregoing conduct, the Defendants knowingly made false statements to the SBA for the purpose of influencing its actions and/or obtaining HUBZone SBC

**COMPLAINT - 37**

status and the attendant ability to enter into HUBZone set-aside contracts, which are a thing of value, in violation of 15 U.S.C. § 645(a).

139.    Under 12 U.S.C. § 1833a(c)(3) and 28 C.F.R. § 85.3(a)(6), Defendants are liable for civil penalties under FIRREA.

### Count IV: Unjust Enrichment

140.    Plaintiff incorporates all previous paragraphs as if fully set forth herein.

141.    By reason of the foregoing conduct and their violation of federal law, the Defendants were unjustly enriched and are liable to account for and pay such amounts, which are to be determined at trial, to the United States.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the United States of America, prays that this Court enter judgment in its favor and against Defendants, jointly and severally, granting the United States the following:

1.    Under Counts I and II (False Claims Act), the amount of the United States' damages, trebled as required by law, plus such civil penalties as are required by law, together with all such further relief as may be just and proper;

2.    Under Count III (FIRREA), a civil penalty in an amount to be determined as required by law;

3.    Under Count IV (Unjust Enrichment), an accounting and the amount by which Defendants were unjustly enriched, plus interest, costs, and expenses, and all such further relief as may be just and proper; and

4.    Such other relief as this Court may deem just and proper, together with interest and costs of this action.

**COMPLAINT - 38**

DATED this 22nd day of November 2019.

BART M. DAVIS
UNITED STATES ATTORNEY
By:

*/s/ James P. Schaefer*
JAMES P. SCHAEFER
Assistant United States Attorney

**COMPLAINT - 39**

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

|  |  |  |
|---|---|---|
|  | ) |  |
|  | ) |  |
|  | ) |  |
| _____ | ) |  |
| *Plaintiff(s)* | ) |  |
| v. | ) | Civil Action No. |
|  | ) |  |
|  | ) |  |
|  | ) |  |
| _____ | ) |  |
| *Defendant(s)* | ) |  |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*


A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:


If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.


*CLERK OF COURT*


Date: _____          _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

**PROOF OF SERVICE**
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*

_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Plaintiff(s)* | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*

_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

JS 44 (Rev. 09/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| United States of America | Northcon, Inc. and Randall L. Smith |

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant ___Kootenai, ID___
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
AUSA James P. Schaefer, U.S. Attorney's Office - District of Idaho
800 Park Blvd., Suite 600, Boise, ID 83712
208-334-1211

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question *(U.S. Government Not a Party)*

☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☒ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) ☐ 863 DIWC/DIWW (405(g)) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI ☐ 865 RSI (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 550 Civil Rights ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from Another District *(specify)*

☐ 6 Multidistrict Litigation - Transfer

☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
31 U.S.C. §§ 3729-3733
Brief description of cause:
Violations of the FCA, civil penalties under FIRREA and damages for the common law unjust enrichment.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE
11/22/2019

SIGNATURE OF ATTORNEY OF RECORD
/s/ James P. Schaefer

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.